```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
_____
                              :
JOHNNY CHAPARRO,              :
                              :
         Petitioner,          :    Civ. No. 20-5272 (NLH)
                              :
    v.                        :    OPINION
                              :
                              :
DAVID ORTIZ,                  :
                              :
         Respondent.          :
_____:
```

APPEARANCES:

Johnny Chaparro
45304-424 Unit 5752
Fort Dix Federal Correctional Institution
P.O. Box 2000
Joint Base MDL, NJ 08640

    Petitioner Pro se

Craig Carpenito, United States Attorney
John Francis Basiak, Assistant United States Attorney
Office of the U.S. Attorney
402 East State Street, Room 430
Trenton, NJ 08608

    Counsel for Respondent

HILLMAN, District Judge

    Petitioner Johnny Chaparro brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 asking to be released to home confinement due to the coronavirus COVID-19 pandemic. See ECF No. 1. He has also filed a motion for a preliminary injunction enjoining the United States from asserting failure to

exhaust administrative remedies "as a defense and justification to deny release due to COVID-19 for inmates with underlying medical conditions identified by the CDC as being deadly within 14 days should said inmate contract C0VID-19." ECF No. 13 at 2.

Respondent United States opposes the § 2241 petition, arguing that the Court lacks habeas jurisdiction over the request and that Petitioner failed to exhaust his administrative remedies. ECF No. 11.

For the reasons that follow, the Court will dismiss the § 2241 petition and deny Petitioner's motion for injunctive relief.

I.  BACKGROUND

Petitioner pled guilty to conspiracy to possess with intent to distribute a controlled substance, 21 U.S.C. §§ 846, 841(b)(1)(A), 851. See United States v. Chaparro, No. 12-cr-969 (N.D. Ill. Nov. 10, 2016) (ECF No. 501). The district court sentenced Petitioner to a total term of 209 months of incarceration. Id. "Petitioner has served 50.2% of the statutory term of his sentence. Assuming Petitioner receives all good-conduct-time credits, his projected release date in November 14, 2027." ECF No. 11 at 6. He is presently confined at FCI Fort Dix, New Jersey.

Petitioner filed a letter on April 28, 2020 requesting "an emergency order to the Federal Bureau of Prisons to release

2

Petitioner due to the coronavirus pandemic."  ECF No. 1 at 1.[1] He argued the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 12003(b)(2) (2020)("CARES Act") identified Petitioner "because of his medical condition as being in imminent danger of death from the coronavirus if he were to remain incarcerated in the BOP."  Id. at 2.  "FCI – Fort Dix has no capacity to protect petitioner from the transmission of the coronavirus from BOP officers and other inmates."  Id.  He states he suffers from Type II diabetes, chronic high blood pressure, chronic high cholesterol, chronic hypertension, and kidney stones.  Id.

On July 8, 2020, Petitioner filed a motion for a preliminary injunction.  ECF No. 13.  He argues the BOP should not be able to assert failure to exhaust administrative remedies as a defense to his § 2241 and requests a "discovery order to the BOP to produce the following information and documentation from FCI - Fort Dix and each step of the administrative process to and including BOP Tort Claim processing and final decision (including time received at each step of the process and time

---

[1] Petitioner also submitted a proposed amended petition that included a request for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) as modified by the First Step Act of 2018.  ECF No. 5.  The Court notified Petitioner that it lacked jurisdiction to consider Petitioner's First Step arguments because such motions must be filed before the sentencing court. ECF No. 6 (citing 18 U.S.C. § 3582(c); United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020)).

decided by inmate processing number starting with the BP-8 submitted to each Unit Team at FCI Fort Dix for the past 24 months)." ECF No. 13 at 2. He "challenges the 'effectiveness' of a BOP Program that was never designed nor did the Court's intend it to apply to a once in a 100 years Global Pandemic like COVID-19 which is so deadly that it kills in 14 days." ECF No. 15 at 1.

The United States argues that the Court lacks jurisdiction over the petition because it contests the conditions of Petitioner's confinement as opposed to the execution of his sentence. ECF No. 11. It further argues Petitioner failed to exhaust his administrative remedies before filing his habeas petition.

II. DISCUSSION

A. Legal Standard

Title 28, Section 2243 of the United States Code provides in relevant part as follows:

> A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520

4

(1972).  A pro se habeas petition must be construed liberally. See Hunterson v. DiSabato, 308 F.3d 236, 243 (3d Cir. 2002).

To obtain preliminary injunctive relief, the moving party must demonstrate: (1) a reasonable likelihood of success on the merits; (2) irreparable injury if the requested relief is not granted; (3) the granting of preliminary injunction will not result in greater harm to the non-moving party; and (4) the public interest weighs in favor of granting the injunction. Reilly v. City of Harrisburg, 858 F.3d 173, 176 (3d Cir. 2017), as amended (June 26, 2017).

    B.   Analysis

        1.   Conditions of Confinement

The United States argues this Court lacks jurisdiction over the petition because it does not concern the "core" of habeas. "The 'core' habeas corpus action is a prisoner challenging the authority of the entity detaining him to do so, usually on the ground that his predicate sentence or conviction is improper or invalid."  McGee v. Martinez, 627 F.3d 933, 935 (3d Cir. 2010) (citing Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002)). Section 2241 "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence."  Coady v. Vaughn, 251 F.3d 480, 485 (3d Cir. 2001).  "Examples of habeas claims that affect the duration of confinement include parole challenges, loss of good

5

time credits and incorrect sentence calculations." Wragg v. Ortiz, No. 20-5496, ___ F. Supp. 3d ___, 2020 WL 2745247, at *14 (D.N.J. May 27, 2020).  "Conversely, when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction," a civil rights action is the proper method to seek relief. Leamer, 288 F.3d at 542.

Petitioner argues that his illnesses combined with Fort Dix's allegedly insufficient response to COVID-19 make his continued detention in that facility unconstitutional.  He disputes the BOP's characterization of its response to COVID-19 at Fort Dix and the amount of sick and deceased inmates.  ECF No. 15 at 10.

The Honorable Renée Marie Bumb of this District recently dismissed a putative class action filed under § 2241 raising claims like Petitioner's on behalf of all "medically vulnerable" inmates at Fort Dix.  Wragg, No. 20-5496, 2020 WL 2745247.  Like the petitioners in Wragg, Petitioner invokes § 2241 jurisdiction because he "is challenging his 'level of confinement' from a Low facility to Home Confinement based on the threat of illness or death from COVID-19 and the inability of FCI Fort Dix to protect him."  ECF No. 15 at 6.  Judge Bumb rejected this argument in Wragg.

6

After discussing the general distinction between claims brought in habeas versus claims brought in civil rights actions, Judge Bumb noted that the Supreme Court in dicta left open the possibility that prisoners might be able to challenge their confinement conditions via a petition for a writ of habeas corpus in exceptional circumstances.  See id. at *15 (citing Bell v. Wolfish, 441 U.S. 520, 526 n.6 (1979); Preiser v. Rodriguez, 411 U.S. 475, 499 (1973)).  However, "neither the Supreme Court nor the Third Circuit has ever recognized any exceptional circumstance that would allow Petitioners to challenge their conditions of confinement in a habeas petition." Id. (citing Muhammad v. Close, 540 U.S. 749, 751 n.1 (2004)). Judge Bumb declined to find that the mere threat of exposure to COVID-19 was such an exceptional circumstance and dismissed for lack of habeas jurisdiction.  "To be fair, Petitioners' fear of contracting COVID-19 is not unwarranted.  Such a fear permeates American society, and in a prison environment such fears are most likely heightened.  But nothing in the Complaint rises to the level of circumstances that warrant habeas relief."  Id. at *19.

The Court is persuaded by the reasoning in Wragg. Petitioner's arguments are about the alleged conditions at Fort Dix; "but for conditions related to COVID-19, Petitioner['s] claims would not exist."  Id. at *15. (D.N.J. May 27, 2020).

7

The Court concludes that it does not have jurisdiction under § 2241 to address a claim that the threat of COVID-19 exposure in and of itself makes Petitioner's confinement in Fort Dix unconstitutional.

2. Failure to Exhaust

The Court denies Petitioner's motion for a preliminary injunction enjoining the United States from asserting a failure to exhaust defense. ECF No. 13. The Third Circuit recently clarified the standard for granting a preliminary injunction, explaining that "a movant for preliminary equitable relief must meet the threshold for the first two 'most critical' factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." Reilly v. City of Harrisburg, 858 F.3d 173, 179 (3d Cir. 2017), as amended (June 26, 2017). "If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." Id. Petitioner fails these critical gateway factors.

Petitioner is not likely to win on the merits of his petition because the Court has determined that it lacks jurisdiction over the specific claims raised. He has also

8

failed to show he is "more likely than not to suffer irreparable harm" if the Court does not prevent the United States from asserting a failure to exhaust defense. Petitioner has expressed an understandable fear of contracting COVID-19, but an increased risk does not necessarily mean Petitioner will "more likely than not" contract the virus.

Although the Court need not consider the second two factors because Petitioner has not satisfied the gateway factors, the Court will discuss them for completeness. The Court must consider whether the granting of a preliminary injunction will not result in greater harm to the non-moving party. Petitioner argues that the BOP will not be harmed because "[t]he suffering or death of petitioner far outweighs any suffering of the BOP if an inmate is released due to COVID-19 and underlying medical conditions," ECF No. 13 at 3, but what the Court must consider is the harm if it prevents the BOP from raising an affirmative defense versus the harm to Petitioner if the Court allows the BOP to raise that defense.

The Court finds that the BOP would be harmed by an order precluding it from arguing that Petitioner failed to exhaust his administrative remedies. The executive branch has specifically set out the procedures for inmates to file grievances within the federal prison system. See 28 C.F.R. § 542.10 et seq. In addition, the courts require exhaustion in part because

9

"providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 761–62 (3d Cir. 1996). An order denying the BOP the ability to raise the exhaustion defense would encroach on that administrative autonomy. Moreover, Petitioner would not be harmed by allowing this defense because failure to exhaust is not jurisdictional.

The Court also concludes that the public interest does not weigh in favor of granting the injunction. The other reasons for the exhaustion requirement in § 2241 proceedings are facilitating judicial review by allowing the appropriate agency to develop a factual record and apply its expertise, and conserving judicial resources by permitting agencies to grant the relief requested. Id. at 761. The public is served by conserving judicial resources and the facilitation of judicial review of claims.

Having declined to issue an injunction preventing the BOP from asserting a failure to exhaust defense, the Court now considers that defense as applied to Petitioner's CARES Act claim. Petitioner did file a request for compassionate release under 18 U.S.C. § 3582 due to COVID-19 on May 19, 2020, see ECF No. 15 at 19,[2] but the standards used by the BOP for

---

[2] In a Declaration signed June 5, 2020 and filed on the docket June 9, 2020, BOP Senior Attorney Christina Clark stated that

10

compassionate release claims and those used for considering a request for home confinement under the CARES Act are different. Compare BOP Program Statement No. 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g), available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf (last visited July 23, 2020); with, Memorandum for Director of Bureau Prisons, Mar. 26, 2020, available at https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf (last visited July 23, 2020).  See also ECF No. 11-1 ¶¶ 4-6. Even if the request did include a request for further consideration under the CARES Act, it is clear Petitioner did not complete the entire grievance process.

    Petitioner admits he did not appeal after receiving the Warden's response on June 24, 2020.  ECF No. 15 at 5.

---

"[o]n or about April 30, 2020, I accessed the computerized indexes of all administrative remedies filed by Petitioner. Records show Petitioner has never filed an Administrative Remedy requesting home confinement or Compassionate Release."  ECF No. 11-2 ¶ 4.  Her submission to the Court did not include Petitioner's May 19, 2020 grievance requesting compassionate release under 18 U.S.C. § 3582 even though the declaration was signed and prepared after that date.  It is unclear to the Court why Clark retrieved Petitioner's grievance history one day after the petition was filed and over a month before the Court ordered an answer, but the result was what the Court considers at best an unintentionally misleading argument and recitation of the existing administrative record.  It is the Court's hope that counsel will note these observations and ensure that future filings are prepared with a greater level of accuracy.

Petitioner asserts the appeal system is a "dead end" or otherwise futile because the Warden denied the BP-8 request instead of the Unit Counselor, which made appealing to the Warden on a BP-9 form redundant.  ECF No. 15 at 5.  Liberally construing the June 24, 2020 response as completion of the first step, Petitioner still had two more steps to complete before his claim was fully exhausted.  Petitioner was still required to "submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response."  28 C.F.R. § 542.15(a).  Finally, "[a]n inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response."  28 C.F.R. § 542.15(a).  "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."  28 C.F.R. 542.18.  "Appeal to the General Counsel is the final administrative appeal."  28 C.F.R. § 542.15(a).

Petitioner essentially argues that the exhaustion process is futile because the process takes too long.  "In a similar situation, where a prisoner sought immediate compassionate release from prison based on the threat of COVID-19, the Third Circuit required exhaustion of administrative remedies, stating

12

that 'the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.'" Furando v. Ortiz, No. 20-3739, 2020 WL 3264161, at *3 (D.N.J. June 17, 2020) (quoting United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020)). "At this time, the threat of COVID-19 at FCI Fort Dix does not make exhaustion of administrative remedies futile." Id. That Petitioner disputes the BOP's efforts in controlling the spread is further justification for the need for Petitioner to attempt to resolve this at the administrative level first or to file a civil rights action.[3]  "[T]he factors the BOP considers for home confinement eligibility under the CARES Act are subject to deviation and may be revised if circumstances change. Therefore, exhaustion of administrative remedies serves an important purpose." Roscoe Benton III, v. David Ortiz, No. 20-4056, 2020 WL 3287971, at *3 (D.N.J. June 18, 2020).

    3.    Compassionate Release

As the Court noted in its May 20, 2020 Order, ECF No. 6, the Court lacks jurisdiction over any claim for compassionate

---

[3] The Court notes that exhaustion is mandatory under the Prison Litigation Reform Act in any action concerning prison conditions.  42 U.S.C. § 1997e(a).

release under 18 U.S.C. § 3582(c) because that claim must be filed in the sentencing court, which in this case is the Northern District of Illinois.  The Court declines to transfer Petitioner's request for compassionate release because the sentencing court has already considered and rejected Petitioner's request for compassionate release.  See Chaparro, No. 12-cr-969 (N.D. Ill. July 6, 2020) (ECF No. 533).

III. Conclusion

Petitioner's motion for a preliminary injunction is denied. The Court will dismiss the habeas corpus petition for lack of jurisdiction or, in the alternative, for failure to exhaust.

An appropriate Order will be entered.


Dated: July 24, 2020            s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.